During and throughout the district court proceedings in this case, Mr. Huerta-Torres consistently denied any knowledge of or involvement with the methamphetamine and fentanyl found throughout the Owasso home where he was arrested. Those statements are incompatible with a finding of guilt on counts 1, 2, and 4 of the superseding indictment. The district court should not have accepted the defendant's pleas to those counts and committed two critical Rule 11 errors in doing so. First, the court erred in failing to inform the defendant of the essential elements of the offense and confirm that the defendant understood those elements as required under Rule 11b1g. And second, the court erred in failing to establish a factual basis for those offenses as required under Rule 11b3. While the defendant did not object to either of these errors below, each was plain, prejudicial, and seriously affected the fairness and integrity of the court's proceedings. But what if the colloquy before the district court had been along these lines where the district court is preparing to read the elements and the defense counsel says, wait a minute, your honor, we'll waive the reading of the elements. I've carefully gone over these elements with my client as we constructed the plea agreement in this case and represented the court that he fully understands the elements and what would be required to be proved for him to be convicted of these crimes. I still don't think that would be enough on this record, your honor, for the simple reason that you got to accept my hypothetical. Well, assuming that happened based on the other statements that happened during the proceeding, accepting the hypothetical. But even then, in this court, in the Gagot decision, I'm not quite sure how it's pronounced, that was basically the exact circumstance the court faced. The court in that case, the defense counsel said, no worry about reading the indictment, your honor, I've already talked to him about all these things. But then the defendant went on to make statements that made clear that he didn't understand what exactly he was pleading guilty to. And in that case, the court said, even though the defense counsel was the contributing cause to a lot of the confusion that abounded at the district court proceedings, that still is not, that doesn't cure the Rule 11 issue and that doesn't excuse the Rule 11 issue. And in that case, the court reversed. Okay. Keep my hypothetical in play and say that defense, that the court then said, your honor, or counsel, I'm concerned because I'm looking at this plea agreement and it appears to me that your client doesn't seem to know much about what was actually happening here. And defense counsel says, your honor, I understand that. I ask you to be cognizant of the fact that we've carefully crafted this plea in accordance with Tenth Circuit precedent for strategic purposes in this case. Your honor, in that case, still requirement under Rule 11 that the court address the defendant personally and advise the defendant. I understand you may have received advice from your counsel, but I need you to understand these are the elements of the offense. I'm going to walk through them with you. I want to ask you questions to make sure you understand those elements. And then on top of that, I'm going to walk through what it is you are admitting that you did in this case. So I can confirm for myself that your admissions line up with each of the elements of this offense because Rule 11 is meant to safeguard a defendant in this exact circumstance from unknowingly pleading guilty to conduct without a factual basis for it. Well, in those hypotheticals, do you really think that prongs three and four of plain error would be met? I hear you saying it's almost ipso facto that they're met in this type of case. Sorry, I'm trying to now play back the hypothetical in my head to go through the third and first prongs there. I'm just saying that, you know, we still, even if it's plain and erroneous, we still have to decide if it was substantially prejudicial and undercuts the integrity of the judiciary. And these hypotheticals, I mean, you're telling us that you can't offload any of this to defense counsel, no matter what they say. Well, I think in those hypotheticals, if we assume those things happened at the change of plea hearing, but that the remainder of the change of plea hearing went on as it did here and the defendant is saying time and again, I didn't know anything about those drugs in the attic, never talked to anybody about those drugs in the attic, in that circumstance, that is a clear sign that the defendant is denying an essential element needed to establish guilt on these offenses. And that triggers a duty on the court to inquire further because if there's confusion in the record, that's part of what Rule 11 is meant to achieve. But similar to Judge Tempkowitz's questions, how do we think about a plain error analysis when this was all orchestrated by the defendant? He gave notice of a change of plea on the eve of trial. The only factual basis was supplied in the plea petition, and there was no plea agreement where the government set forth any elements. And so in the scenario as it played out here, how does that impact, if at all, our analysis on prongs three and four? Well, Your Honor, I think part of what we have to ask about what was orchestrated here, you know, certainly defense counsel believed that these decisions he was looking at made it possible for his client to plead guilty to these offenses without knowing about the drugs in the attic, without knowing that the pills in the garage were fentanyl, or without having any intent to those. That was incorrect. The fact that defense counsel believed that Melton and these other decisions validated the plea here just further shows that defense counsel was confused as well. But as it relates to the third and fourth prongs of the plain error analysis, we have to look at, again, the issue is whether or not had the defendant been advised of these elements, would he have persisted in his not guilty plea? And one of the strongest things that courts look to in evaluating that issue is when the defendant is making statements that consistently deny an essential element of the charge. And he did that at the change of plea hearing, and he did it throughout. And as far as, you know, in some ways, I took from your question that there's some responsibility on defense counsel for orchestrating this error, but the error itself we're talking about is not advising the defendant of the essential elements of the offense. Well, but also we look at the whole record when evaluating plain error analysis, and it's not just the change of plea hearing, it's sentencing. My understanding is Mr. Huerta-Torres testified, and that Judge Hill made credibility findings, particularly in regards to the fentanyl. She said, I just don't find it credible at all that he didn't know about the pills that were in the kitchen where he was cooking his meals. So how do we weigh that evidence when we're looking particularly at, I think it's count four regarding the fentanyl? So two things on that, Your Honor. First of all, the judge's credibility findings, the first fact that she cited was that he had pled guilty to these counts. And so in some ways, as we noted in our reply, it's a circular argument. We're not believing him because he previously pled guilty to these counts, but the problem is he didn't know exactly what he was pleading guilty to. The second point I would note on that, Your Honor, is I'm not aware of any cases, and I'm not seeing any cases where a court has said that disbelieving a defendant in a change of plea context, when the defendant says, I did not know about this essential element, and I did not commit this essential element, that disbelief on that point can establish the proof for the factual basis for a plea. And in fact, the Supreme Court's decision in Alford suggests the exact opposite. In that case, it involved, again, a defendant who's saying, I did not commit the offense, but I accept responsibility for it. And the court said, especially in those types of circumstances, there must be a independent and strong factual basis when a defendant is standing up and denying that. So I think it puts Rule 11 on his head if we're going to say that the judge can somehow disbelieve a defendant's exculpatory statements and that that can provide the factual basis. Yeah, but we do have case law, like Tigner comes to mind, where we evaluate whether or not there was a plausible defense when we're analyzing whether or not we believe the defendant would have still pled guilty had he been advised. So doesn't the court's findings regarding credibility have some impact as to whether or not we can believe that he had a plausible defense, particularly when focused on the fentanyl? I think the Tigner decision and other ones like it kind of fall in a special category because they're dealing with a very unique type of error. It's a Rahaf error. And in that case, the whole issue is, after Rahaf, the Supreme Court said the defendant has to know that he is a felon to be guilty of a felon in possession charge. But that still goes to the knowledge element, which is what you're contesting here. It still does. But, Your Honor, if somebody serves seven years imprisonment, as the court noted in Rahaf and in Greer, if somebody serves a long term of imprisonment, it's really hard to assume in that case that somebody forgot about their time in custody. And so it's going to be a unique and rare case that a Rahaf error is going to meet that third plain error problem. But crucially, there are cases out there where it happens. We cite the Hayward decision from the Fourth Circuit in our brief. In that case, it was a Rahaf error. The defendant was convicted of a state court misdemeanor, but it was only denominated a misdemeanor under state law. It carried a maximum two-year prison term. He was sentenced for only six months probation. During and throughout the district court proceedings, he's telling the court, I'm sorry, I didn't know it was a felony. I thought it was a misdemeanor. I was only sentenced to six months. But I pled guilty before Rahaf. And so he said, but I accept responsibility. And then Rahaf comes down. And on appeal, he makes this argument saying, look, throughout the district court proceedings, I'm denying that I had any knowledge that I was a felon. Before Rahaf, that wasn't an issue. But now that Rahaf's in the picture, I wouldn't have pled guilty. And the Fourth Circuit looked at those consistent denials throughout the district court record and said that that established the third prong for plain air review and warranted vacating his plea and sending it back. Can we notice, take notice of his roommate's plea and the statements in it that it was he and Mr. Huerta? I don't think so, Your Honor. And if we can, does it matter? I think, yeah, I think two points on that. I don't know that that should be something the court should consider. But I think the bigger and easier point on that is it just does not carry, it does not carry the argument. There is a statement that the government put in the factual basis of the plea agreement that just says in conclusory fashion that he and his co-defendant possessed the drugs in the house or possessed the 500 grams of methamphetamine in the attic. There's no factual development to that. He does not say the same, does not make that same statement in his plea petition, which he himself authors or his counsel authors. And even then, the statement is itself is too conclusory to provide a factual basis for the plea because we're not dealing here. It would be different if we were dealing with an actual possession case. Well, I mean, a lot of these possession cases and stuff will have a statement in there. I possessed 500 grams or more of methamphetamine without any further debate. It doesn't say and it was hidden in the kitchen in a stew pot underneath the third cabinet from the right. I think that's fair, Your Honor. But here we have him at the same time during and throughout the plea saying, I didn't know about those drugs in the attic. And there's no allegation here that Mr. Huerta Torres ever actually possessed those drugs. The government acknowledges in its response that this is a constructive possession case. And constructive possession requires a higher mens rea element. We have specific jury instructions. We don't send the case to the jury just saying, decide whether or not he possessed it. We have a specific jury instruction for constructive possession because they have to prove knowledge. They have to prove that he had access to the contraband. They have to prove that he had the intent, exercise, dominion, and control over that contraband. And if he doesn't know anything at all about the methamphetamine hidden under the insulation in the attic, then there cannot be constructive possession in this case. Is your position on the fentanyl D.I. based on the idea that he says he didn't know that those blue pills were fentanyl? He says at the change of plea hearing that he doesn't know those blue pills were fentanyl. He doesn't ever anywhere acknowledge in the change of plea hearing an intent to distribute those drugs. He doesn't acknowledge that he ever possessed those drugs. Later on throughout the proceedings, he specifically denies knowing that they were fentanyl or any illegal controlled substance. And so again, all of those things, there's not a factual basis when you look at the entire record as a whole to establish the necessary elements as to the fentanyl. Counsel, how do we think about the fact that you're not contesting two of the counts on appeal and if we were to grant you any relief, it doesn't change the bottom line result because you've got 121 months concurrent time on all five counts. Does that impact our analysis at all? Your Honor, I believe that he does. One of the things we are asking for here is that the sentence be vacated as well because under the kind of Would we vacate the sentence on the other two counts? I believe so, Your Honor, because it's part of the sentencing package doctrine that we cite and discuss in our opening brief that the government does not contest in its response. And in here, as this Court has been clear, when a defendant is, when we vacate counts that establish mandatory minimums, which are the three counts we're challenging, then that unbundles the sentencing package and we need to have resentencing. I see I'm out of my time. Thank you. Thank you, Counsel. May it please the Court, Thomas Duncombe for the United States. When you're working for a Mexican drug cartel, and they put you in charge of a house, and you know that you're maintaining that house to sell drugs out of it, and you've sold drugs out of the house, and you know there are more drugs in the house that your co-conspirators are storing there, that's part of your job in guarding the house, and you further admit that it's reasonably foreseeable to you that your co-conspirators were keeping even more drugs in the house than you personally know about, it is no defense, whether at trial or at sentencing, to say that you didn't know what particular drugs and particular quantities were in the house. Now all of that is just assuming that everything that Mr. Huerta Torres said in his very specific statement of facts in the petition was true, which, of course, the district court found was not the case, that Mr. Huerta Torres knew about and participated in the larger goals of the conspiracy, that he was not credible when he testified, that he didn't know about the other drugs in the house. Is that true about the methamphetamine, though, too? The district court said basically several things. First of all, the unit of measurement in this case is the house. It's not the kitchen, for example. It's not the garage. It's the house. And he agreed that he was maintaining the house, and he has not challenged count three, for example, where he admits, it's right there in the indictment, I maintained a premises for the purposes of distributing heroin, fentanyl, and methamphetamine. And the methamphetamine wasn't only in the attic in this case. The biggest part of it was in the attic. But some of it was packaged for distribution in the kitchen, in the same box where some of the heroin was located. So the court should affirm here whether the court credits Mr. Huerta Torres' denials that went along with his admissions in his petition to enter a guilty plea, because the de la Torre case and the Anaya case show that for possession with intent to distribute and for drug conspiracy, the defendant's knowledge does not have to go to the specific quantities or the specific types of controlled substances. All that's required is that the defendant, for conspiracy, knew the essential objective of the conspiracy was to distribute drugs. He clearly knew that here. And for possession with intent to distribute, that he possessed the drugs that were in that house, which, as the, as Sergeant Lasky testified at the sentencing hearing, the, it is unreasonable to expect that the cartel would leave a large quantity of drugs in that house without the people controlling that house and in charge of protecting that house knowing what's there and knowing what they're supposed to be in charge of protecting. Well, maybe they were compartmentalizing the information. Maybe they didn't want him to know about everything. Maybe they didn't want Mr. Huerta to know, or his co-defendant, or, you know, to know about everything. And that is a perfectly good argument for Mr. Huerta Torres to make in sentencing. And it's the reason why things like minor role and minimal participant exist. It's the reason why things like the safety valve exist, because if, for example, if you're driving a car that your mob boss tells you you're to take these drugs and drive them to St. Louis, and unbeknownst to you, in addition to the drugs you know are in the trunk, they've hidden even more drugs in the side panels of the car, you are liable for criminal liability purposes for all the drugs in the car by the same principle that you're liable for the meth and the marijuana in the backpack in deletory, because you knew there were drugs in that backpack. And whether you actually possessed that backpack or constructively possessed that backpack, you possessed it. And so this court has never required, and its jury instructions reflect that it's never required, that the defendant know, okay, in this space I've got this amount of methamphetamine and this amount of heroin and this amount of fentanyl. The defendant's got to know that the conspiracy is about drugs and that he is helping to further the goals of that conspiracy. I did want to reference some of the cases that Mr. Cuerta Torres brought up. Was he charged with conspiracy to distribute all three of these substances? No, he wasn't. The count one was conspiracy to distribute methamphetamine. So we're not talking about conspiracy to distribute drugs, right? No, we are, actually, for purposes of this court's case law and for purposes of this court's jury instructions. There's no requirement that he have to know for conspiracy purposes that it's methamphetamine. The government has to prove that the overall scope of the conspiracy involved over 500 grams of methamphetamine. But just as the defendant in Anaya, who was building traps to put in cars, barely knew that they were distributing drugs. I mean, he knew because he used words like kilos and he knew that they had large quantities of money in there, but he certainly didn't know that there was a mandatory minimum quantity of a specific drug that was going into that car. But he was liable criminally for the specific conspiracy that because he act to embrace the larger goals of the conspiracy. And again, if he wants to argue, and he may be right, that he didn't know that they were going to be distributing that many drugs, that's what the sentencing considerations are for. Things like minor role, minimal participant. I was just a drug mule. I didn't know that there were five pounds instead of just one pound. That's what all of that is for. But in drug conspiracies and in possession cases, you're in for a penny, you're in for a pound. And in this case, it's no defense to say that the methamphetamine was hidden in a different part of the house, because it's entirely reasonable. I mean, first of all, Mr. Cuerta Torres said it was reasonable for him to expect that there were other drugs in the house that he didn't know about. But it's reasonable that if you've got the biggest quantity of drugs, you're going to put that in the most out-of-the-way place that police are less likely to find it when they search other places in the house. Counsel, may I ask, this is a compelling argument for why the evidence supported potentially a guilty finding, but we're tasked to engage in somewhat of a different inquiry. And that is, at his change of plea, when he is presented to the court that he had no knowledge of, and again, I'll use the methamphetamine, had the court stopped and said, well, particularly in regards to possession with intent, I'm telling you, you have to be able to say that you knew that there was methamphetamine in the house and that you even constructively possessed that controlled substance with the intent to distribute it. We have to predict whether or not he would then say, well, I can't plead guilty to that. So help me tie together your presentation about the evidence overall to that analysis.  And it relates back to Tignor, and it relates back to Lee and Atiyah, which were some of the cases that Mr. Huerta Torres cited in his reply brief about the substantial rights inquiry specifically for the 11B1G error. Those cases make very clear that where there is no plausible defense, where it is, it would be irrational for the defendant to proceed to trial, even if he says subjectively after the fact, well, I would have just gone to trial. We don't just take him at his word. We look at the contemporaneous evidence and we look at the whole record to determine whether that would have been plausible. And the only reason that Lee and Atiyah came out the way they did on substantial rights was because they were involving an 11B1O error, which was a failure to advise the defendant of the immigration consequences of his plea. And the Supreme Court emphasized, and I think Atiyah was the Sixth Circuit, both of those courts emphasized these cases are the outliers. In the normal case where there is no plausible defense, it's highly unlikely that the defendant is going to be able to establish substantial rights. But in this case, the defendants made it clear that they would rather go to prison for longer than be deported. And so even though they faced an uphill road at trial, it still would have been rational for these defendants, with their priorities in mind, to insist on trial if they had been advised of the immigration consequences of their plea. But the court made it very clear that the weight of the evidence matters. And so the weight of the evidence, both direct and circumstantial, at the change of plea hearing, coupled with the sentencing hearing where we had multiple witnesses testify, was overwhelming in this case. And again, that's whether or not you believe Mr. Huerta-Torres' story about only knowing about select parts of the puzzle and only distributing 60 grams of heroin and not having paid any money to be taken across the border, which the district court clearly did not believe. I do want to talk briefly about sentencing on counts three and five, which, of course, we didn't address in our brief. But it's true, whether we address it or not, that the court imposed concurrent sentences on counts three and five. And I did just want to point out, since the court brought it up, that under 2D1.8 for maintaining a drug-involved premises, the sentencing is the same because it reverts back to 2D1.1. And so you look at the drug weight. And again, Mr. Huerta-Torres has not contested any of the court's findings at sentencing as to the scope of the overall conspiracy or that Mr. Huerta-Torres actually participated in the greater scope of the conspiracy. Counsel, can I ask one more question? The factual basis in the co-defendant's plea, can you help me understand how that fits into our analysis? Yes, so it fits in in a couple of different ways. I mean, the first is that the defense attorney put it in the record. I mean, and so I understand Mr. Huerta-Torres' point that the government probably drafted that language in the plea agreement. And I wasn't involved with that plea negotiation. But I imagine that's probably right. So that when Mr. Diaz-Castrojones says, I and my co-defendant knew about the methamphetamine and possessed it, it's possible that we have a defendant who just signed something and didn't know what he was signing. But we presume that he knew what he was signing. And the defense attorney and Mr. Huerta-Torres certainly didn't treat it as though it was an off-the-cuff suggestion. The defense attorney specifically brought it up and says, well, Mr. Diaz-Castrojones says that my client knew about the methamphetamine, but I want to delve into the credibility of Mr. Diaz-Castrojones because that's important to us. And I think it's telling that the magistrate judge, whose change of plea colloquy was not a model of clarity, did say one thing that was right on the money, which is when Mr. Huerta-Torres started to go into whether he knew about the meth in the attic or other particular drugs in particular parts of the house, the magistrate judge stopped him and said, I think that's more of a sentencing issue, which intuitively the magistrate judge kind of knew, we don't need to go into that for a drug case. You've admitted you knew you had drugs. You've admitted you maintained the house for all the drugs. And you've admitted you participated in a conspiracy for drugs. So you can move on to sentencing. You can make your minimal participant argument, your minor role argument, your safety valve argument. But the other way in which the plea agreement of the co-conspirator contributes here is it's just yet one additional data point that helps argue against substantial rights, argue against Mr. Huerta-Torres's substantial rights argument, because in addition to all the other information that he had at his disposal, he had clearly a copy of the co-defendant's guilty plea, which is to count two, laid out the elements specifically of this is what you need in order for possession with intent to distribute fentanyl. That would have been the same for count four, excuse me, for methamphetamine. It was 500 grams of methamphetamine because it was count two. That would have been the same for count four, except for the drug. So that's just, again, it's not the entire puzzle here. It's just a piece of the puzzle. But it helps. If there are no other questions from the court, government would ask the court to affirm. Thank you, counsel. Would you care for some rebuttal? Briefly, your honor. Give him 60 seconds. Your honor, I just want to briefly touch on Aniyah. That case is very different than the facts that we have here. In that case, it was a defendant, as my friend across the aisle referenced, a defendant who was installing secret compartments in these cars for a drug trafficking organization. He, in that case, knew that they were moving large quantities of drugs and he took steps to establish interdependence as to that full scope of the conspiracy. He also, though, took steps to try and build in a willful blindness. He tried to separate himself to avoid certain facts. And there was actually an instruction in that case on willful blindness, allowing the jury to infer knowledge in that case based on those actions. Other things I will note about Aniyah and just counsel's arguments regarding in for a penny, in for a pound, and this idea that the drug type does not matter at all. That is directly contrary to this court's earlier decisions in Evans and in Anderson, both of which we cite in our brief. We would urge the court to read those decisions. Thank you, counsel. We appreciate the arguments. You're excused. Case is submitted.